D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WAYNE GOETZ, an individual, ) | |
| ) | CASE NO. CV 03-068-S-MHW |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM DECISION** |
| ) | **AND ORDER** |
| WAYNE TOUSLEY, individually and in ) | |
| his official capacity as Sheriff of Twin Falls ) | |
| County; ALAIN MECHAM, individually ) | |
| and in her official capacity as a Deputy ) | |
| Sheriff of Twin Falls County; and TWIN ) | |
| FALLS COUNTY, a political subdivision ) | |
| of the State of Idaho, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## INTRODUCTION

Plaintiff Wayne Goetz filed this action against Defendants Wayne Tousley, Alain Mecham, Lou Coronado, and Twin Falls County, alleging violations of 42 U.S.C. § 1983 arising from an arrest for aggravated assault. Currently pending before the Court for its consideration is Defendants' Motion for Summary Judgment (Docket No. 54), filed May 9, 2005. Having reviewed all briefing submitted, as well as other pertinent documents in the Court's file, and having heard oral arguments, the Court finds that, for all of the following reasons, the Defendant's motion should be granted.

**Memorandum Decision and Order - Page 1**

# I.
# Background

**A. Procedural History**

On February 21, 2003, Plaintiff Wayne Goetz ("Goetz") brought this 28 U.S.C. 1983 action against Defendants Wayne Tousley, Alaina Mecham, Lou Coronado, and Twin Falls County ("the County") (know collectively as "Defendants"). On December 10, 2004, Goetz filed an Amended Complaint, which included the following six claims: Count I (false arrest or lack of probable brought against Mecham and Coronado); Count II (malicious prosecution brought against Tousley, Mecham, and Coronado); Count III (failure to train brought against Tousley and Twin Falls County); (Count IV (failure to screen brought against Tousley and Twin Falls County); Count V (continued detention against Tousley and Twin Falls County); and Count VI (strip and cavity search brought against Tousley and Twin Falls County).

On September 2, 2004, Defendants filed a Motion to Dismiss, or alternatively, their Motion for Summary Judgment with respect to all of Goetz's claims. The parties had already agreed to suspend discovery in June, 2004. On November 23, 2004, the parties filed a Stipulation, agreeing to bifurcate the issues raised in Defendants' Motion such that the Court would first address the qualified immunity issues presented as to Counts I and II of the Amended Complaint and the legal issues presented with respect to Counts II, V, and VI, while holding in abeyance the issues raised in Counts III and IV and part of Count II. (Docket No. 39.) The Court entered an Order granting the Stipulation on December 3, 2004. (Docket No. 40.)

In its first Memorandum Decision and Order, the Court limited its decision to the following issues: (1) whether Mecham and Coronado had probable cause to arrest Goetz (Count I–false arrest); (2) whether Defendants prosecuted Goetz with the purpose of denying him a

**Memorandum Decision and Order - Page 2**

specific constitutional right (Count II–malicious prosecution); and (3) whether the Goetz's continued detention and strip and cavity search claims were time barred (Counts V and VI). The Court granted in part and denied in part Defendants' motion, holding that all claims against Defendants arising from Goetz's arrest were dismissed on the basis that the arresting deputies had probable cause to arrest Goetz. They only remaining claims which survive relate to Goetz's alleged strip search and continued detention. In addition, the only defendants which remain are the Twin Falls County Defendants since the deputy sheriffs who arrested Goetz did not participate in the incarceration.

### B. Facts

As all involved are familiar with the background of this case, the Court will give only a brief synopsis of those facts pertinent to the remaining claims. They are as follows:

This case arises from the arrest of Goetz for Aggravated Assault, Idaho Code § 18-905, on February 22, 2001. At the time of Mr. Goetz's arrest, he was transported to the Twin Falls County Criminal Justice Facility (the "Facility"). At the Facility, Goetz alleges that he was fingerprinted, photographed, and searched. (Goetz Aff. at ¶ 42). Goetz further alleges that the detention deputy ordered him to remove all his clothing, including his undergarments, and he then proceeded to conduct a strip and partial cavity search of Goetz during which he allegedly manually inspected Goetz's genitalia, buttocks, mouth, ears, nose, and hair. (Goetz Aff. at ¶ 43). In addition, Goetz alleges that the detention deputy first inspected his genitals while wearing latex gloves, and then without changing the gloves, continued searching Goetz by placing his fingers inside Goetz's mouth. (Goetz Aff. at ¶ 44). Goetz spent the night in jail, and the next morning, Deputy Prosecuting Attorney Jonathan Brody decided against prosecution. Goetz alleges he was illegally held for some period of time after that decision was made.

**Memorandum Decision and Order - Page 3**

The Defendants filed the affidavit of Thomas L. Fowers, the Twin Falls County detention officer who booked Goetz into the jail on February 22, 2001. He states that he did not conduct a strip or a body cavity search of Goetz. Whether in fact such a search took places is a disputed fact between the parties. However, it is undisputed that Wayne Tousley did not personally participate in Goetz's incarceration in jail, in any purported strip search, or in Goetz's release from jail. It is also undisputed that Wayne Tousley and the County had a written policy regarding strip searches and body cavity searches at the time of Mr. Goetz's arrest on February 22, 2001. For purposes of the following

## II.
## Legal Standard

When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (1993). A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is not enough for the [non-moving] party to "rest on mere allegations of denials of his pleadings." *Id.* Genuine factual issues must exist that "can

be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." *Id*. at 249-250. "The mere existence of a scintilla of evidence in support of the [defendant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [defendants]." *Id.*

The Ninth Circuit has consistently applied the standard for granting summary judgment. *Musick v. Burke*, 913 F.2d 1390 (9th Cir. 1990); *Pelletier v. Federal Home Loan Bank*, 968 F.2d 865 (9th Cir. 1992); *Bieghler v. Kleppe*, 633 F.2d 531 (9th Cir. 1980).

In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th. Cir. 1981).

The Ninth Circuit has recently emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp*., 976 F.2d 497 (9th Cir. 1992).

> In order to withstand a motion for summary judgment, the non-moving party (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).  For the purpose of the following analysis, the Court will accept Goetz's version of the facts, that he was subject to a strip search.

### III.
### Discussion

**A. Strip and Cavity Search**

Goetz alleges his constitutional rights were violated by Tousley and the County when he was strip searched at the jail.  The deputy who allegedly performed the strip search is not a party to this action.  Nor was Tousley personally involved in the search.  Because Tousley was not personally involved in the search, the Court interprets Goetz's claim as one against Tousley in his official capacity.

State officers sued for damages in their official capacity assume the identity of the government that employs them. *Brandon v. Holt,* 469 U.S. 464 (1985).  Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), *quoting Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).  The first inquiry in any case alleging municipal liability under § 1983 is question of whether there is direct causal link between municipal policy or custom and alleged constitutional deprivation. 42 U.S.C.A. § 1983.  In *Monell*, the Supreme Court decided that a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.  436 U.S. at 658.  Respondeat superior or vicarious liability will not attach under § 1983. *Id*. at 694-695  "It is only when the execution of the government's

**Memorandum Decision and Order - Page 6**

policy or custom ... inflicts the injury that the municipality may be held liable under § 1983." *Springfield v. Kibbe*, 480 U.S. 257, 267(1987) (O'CONNOR, J., dissenting) (internal citation and quotation marks omitted).

The County has established a written policy regarding strip searches[1] at the Facility, which requires "reasonable suspicion" before such a search can be conducted and allows the officer to consider whether the individual is charged with crimes involving weapons or contraband as a basis for the suspicion. The threshold question is whether the blanket policy comports with constitutional standards imposed under the Fourth Amendment prohibiting unreasonable searches and seizures.

The intrusiveness of a body-cavity search cannot be overstated. Strip searches involving the visual exploration of body cavities is dehumanizing and humiliating. The Supreme Court has commented: "Admittedly, this practice instinctively gives us the most pause." *Bell v. Wolfish*, 441 U.S. 520(1979); *see also id.* at 576-77, ("In my view the body-cavity searches ... represent one of the most grievous offenses against personal dignity and common decency.") (Marshall, J., dissenting). While acknowledging the intrusive nature of strip and cavity searches, the Supreme Court has also recognized that such searches may serve legitimate penological interests, i.e. maintaining the security of a facility and preventing the introduction of weapons and contraband inside prison walls. In *Bell*, the Supreme Court, in the context of evaluating and ultimately upholding the constitutionality of a policy under which pretrial detainees were subjected to body cavity searches after each contact with outside visitors, sought to establish guidelines for assessing whether a strip search was reasonable in the particular circumstances:

---

[1] Goetz alleges that he was subjected to a strip *and* cavity search, but his recitation of the facts indicates he was only subjected to a strip search. Thus, the Court will only address the constitutionality of a strip search under the circumstances alleged in Goetz's Complaint.

**Memorandum Decision and Order - Page 7**

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.
> *Id.* at 559. (citations omitted).

In the wake of *Bell*, eight of the circuit courts of appeals have held that there must be a "reasonable suspicion" that an arrestee is concealing weapons or contraband in order for a strip search to be constitutionally justified. *See Weber v. Dell*, 804 F.2d 796 (2nd Cir. 1986); *Jones v. Edwards*, 770 F.2d 739 (8th Cir. 1985); *Stewart v. County of Lubbock*, 767 F.2d 153 (5th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Giles v. Ackerman*, 746 F.2d 614 (9th Cir. 1984), cert. denied, 471 U.S. 1053 (1985); *Hill v. Bogans*, 735 F.2d 391 (10th Cir. 1984); *Marybeth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983); *Logan v. Shealy*, 660 F.2d 1007 (4th Cir. 1981), cert. denied, 455 U.S. 942 (1982). A numbers of courts have noted that reasonable suspicion that a particular arrestee is concealing weapons or contraband can arise, not only from specific circumstances relating to the arrestee or the arrest, but also from the nature of the charged offense. *See, e.g., Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1446 (9th Cir. 1991), *citing Giles*, 746 F.2d at 617. ("[R]easonable suspicion may be based on factors such as the nature of the offense, the arrestee's appearance and conduct, and any prior arrest record."); *see also Davis v. City of Camden,* 657 F.Supp. 396, 400 (D.New Jersey 1987) ("[A] blanket policy covering *only* persons charged with felonies or with misdemeanors involving weapons is justifiable because it is based on a reasonable generalization: that a person charged with these offenses are likely to be concealing weapons or contraband.")

The Twin Falls County's policy incorporates those requirements set forth by the Supreme Court and elucidated by the Ninth Circuit – only allowing an officer to conduct a strip search

**Memorandum Decision and Order - Page 8**

"when *reasonable suspicion* would deem such a search as being in the best interest of the *safety and security* of the facility, inmates, and staff." The terms of the policy provide that the nature of the offense may serve as a guide in the decision to conduct a strip search as opposed to only a "frisk search." For example, when a detainee has been charged with an offense involving the use of a weapon, this may serve as a basis to strip search a particular individual. Other offenses that may warrant a strip search under the policy include charges involving a crime of violence or charges involving narcotic offenses. The inmates prior record for any of these offenses may also serve as a basis for reasonable suspicion.

Such a policy comports with the constitutional standards. Accordingly, the court concludes, if the alleged strip search occurred, it did not violate Goetz's constitutional rights as it was performed in accordance with a constitutional policy allowing strip searches when the arrestee has been charged with a crime involving the use of a weapon. *See, e.g. Davis v. City of Camden,* 657 F.Supp, 396, 400-401 ("Although such a blanket policy, by its very nature, may encompass some individual arrestees with respect to whom reasonable suspicion to search will not exist, such searches will nonetheless by upheld because the *policy* is deemed to be constitutionally justified.") (emphasis in original). The reasonableness determination in this case hinged upon the nature of the aggravated assault offense with which Goetz was charged. Goetz admitted to threatening two individuals with a shotgun. Given the violent nature of the alleged crime, aggravate assault with a dangerous weapon, an officer could have reasonable suspicion that Goetz may have some type of dangerous weapon concealed on his person, thereby justifying the application of the County's policy in these circumstances.

**Memorandum Decision and Order - Page 9**

### B. Continued Detention

Goetz also claims Defendants violated his constitutional rights by continuing his incarceration for an unspecified time period after the Twin Falls Prosecuting Attorney declined to filed charges against Goetz.  The Fourteenth Amendment due process protects individuals from an undue delay in their release after the reason for their detention has ended.  *Brass County of Los Angeles*, 328 F.3d 1192, 1200 (9th Cir. 2003), *citing  Baker v. McCollan,* 443 U.S. 137, 144-46 (1979); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citation omitted).  The Ninth Circuit has stated that "a local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights."  *Berry v. Baca*, 379 F.3d 764 (9th Cir. 2004), *citing Oviatt*, 954 F.2d at 1474 (citation omitted).  However, the policy of inaction must be more than mere negligence, *see Daniels v. Williams*, 474 U.S. 327, 333-36 (1986); it must be a conscious or deliberate choice among various alternatives. *See Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir.2001).  In the context of *Monell* claims of deliberate indifference, the Ninth Circuit has held that, "Whether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question." *Berry,* 379 F.3d at 769, *citing Gibson v. County of Washoe*, 290 F.3d 1175, 1194-95 (9th Cir. 2002).

Implicitly, Goetz argues that the County's policy regarding inmate release violated Goetz's constitutional rights; however, he does not specify what particular part of the County's policy resulted in the constitutional violation.  The County does not have a written policy regarding the time of a detainees release, but contends its unwritten policy requires that detainees are released within a reasonable time.  On its face, the policy is constitutional and the policy could not cause an undue delay in Goetz's release.

**Memorandum Decision and Order - Page 10**

Although the policy itself is constitutional, the County's "unreasonably inefficient implementation of its administrative policies" can amount to a policy of deliberate indifference to Goetz's constitutional rights.  *See Berry v. Baca*, 379 F.3d 764, 768 (9th Cir. 2004). Nonetheless, Goetz has failed to present any evidence to suggest that Defendants acted with even a modicum of deliberate indifference in processing his release. The record indicates the "In-Custody Status" form was date and time-stamped February 23, 2001, at 1:41 p.m. and that Goetz signed a "Release Report " at 1:55 p.m. – only fourteen minutes later.  In *Brass,* the Ninth Circuit held that a 39-hour delay was reasonable, noting "delays are inevitable while the police cope with everyday problems of processing." *Brass*, 328 F.3d at1202, *quoting County of Riverside v. McLaughlin*, 500 U.S. 44, 55 (1991)(internal quotation marks omitted).   "It therefore appears that 'the Fourth Amendment [and the Fourteenth Amendment] [similarly] permit[ ] a reasonable postponement' of a prisoner's release 'while the [County] cope[s] with everyday problems of processing...'" *Id.*  The Court cannot fathom under what circumstance a jury could find a fourteen minute delay was unreasonable – it would seem then that a 14-minute "delay" is reasonable under almost any circumstances without further proof of deliberate indifference on part of Defendants.  Therefore, the Court will grant summary judgment in favor of Defendants on this claim as well.

### C. Timeliness of Defendant's Motion for Summary Judgment and Discovery Responses

Any arguments that Defendants' summary judgment motion is untimely or that Defendants failed to respond adequately to Goetz's written requests are equally futile.  Rather than focusing on the merits of Defendant's Motion, Goetz argues that the Motion is untimely.  However, *pursuant to the stipulation of the parties*, the Court entered a Proposed Order (Docket No. 40), bifurcating  the issues and allowing Defendants 90 days from the Court's order resolving the legal issues to file

**Memorandum Decision and Order - Page 11**

additional briefing and affidavits.  Defendants filed their summary judgment motion within the allotted time period.  Thus, Defendants' motion is timely in accordance with the parties' agreement.

In addition, Goetz seeks additional time to because of Defendants' alleged failure to respond to written discovery.  With respect to this claim, the evidence indicates that counsel for the parties had an agreement to stay discovery pending resolution of Defendants' first dispositive motion, which is often a matter of course when issues of qualified immunity are involved.  Furthermore, the Stipulation bifurcating the issues allowed for 60 days to conduct discovery after the Court issued its first Memorandum Decision and Order.  During this 60-day period, Goetz took the depositions of Defendant Wayne Tousley, Defendant Twin Falls County (with Sheriff Wayne Tousley acting as the County's Rule 30(b)(6) designee), and Thomas L. Fowers, the jailer who purportedly strip searched Goetz.  Thus, Goetz had every opportunity to ask any questions relevant to his claims, including any questions asked in the Written Discovery.  The Court will not further delay this case simply because Goetz has failed to uncover evidence to support his claims.

## IV.
## Conclusion

In conclusion, the Court grants summary judgment in favor of Defendants with respect to both remaining claims.  The Court finds that the County's strip search policy comports with constitutional standards and grants summary judgment in favor of Defendants with respect to this issue.  The Court will also grant summary judgment in favor of Defendants as to Goetz's claim that the County unduly delayed his release after the reason for his detention expired given the lack of evidence to that effect. While Goetz raised several procedural issues relating to the timeliness of Defendants' summary judgment motion and the adequacy of Defendants' discovery responses, the

Court does not find either argument has sufficient merit to preclude summary judgment in favor of Defendants.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that** Defendants' Motion for Summary Judgment (Docket No. 54), filed May 9, 2005, is **GRANTED.**



DATED: October 11, 2005

_____
Honorable Mikel H. Williams
United States Magistrate Judge